E-FILED
Tuesday, 13 October, 2026 11:22:58 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| NIESHA SWANSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-04036-SLD-RLH |
| | ) | |
| TYSON FOODS INC, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

In this case, Plaintiff Niesha Swansey alleges that her employer, Defendant Tyson Foods Inc ("Tyson"), violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, by failing to accommodate her disabilities, retaliating against her for protected activity, creating a hostile workplace and interfering with her work, and wrongfully terminating her employment. Before the Court is Tyson's motion to dismiss, ECF No. 11, arguing that Swansey's complaint, ECF No. 1, must be dismissed because she failed to exhaust administrative remedies for her failure to accommodate claim and because she does not allege facts sufficient to make her other claims plausible. Although the Court agrees that portions of Swansey's complaint are time-barred, Tyson has not met its burden to show that the other portions of Swansey's complaint fail to state claim. As a result, and for the reasons that follow, Tyson's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Swansey worked for Tyson at its plant in Hillsdale, Illinois from 2021 until she was fired on April 25, 2025. She was first hired as a Security Professional and was later promoted to a Human Resources ("HR") Advisor in June of 2023. She long had issues with upper management at the Hillsdale plant, including their disrespectful and unequal treatment of Swansey, about which she complained to Hannah Owens, an offsite corporate supervisor, in August 2023.

In September 2023, Swansey began experiencing leg weakness, thoracic spasms, and tenderness in her spine and groin. She has since been diagnosed with bulging in her lower back. As a result of the symptoms, Swansey was on medical leave from September 27 to October 30, 2023. When she returned to work, she was not yet fully recovered: she required a cane and had a doctor's note restricting her to sixty stairs a day. She requested accommodation for these restrictions from Owens and Kimberly Crane, a senior HR advisor. Nevertheless, for more than a month after returning to work, Swansey was forced to walk up and down three flights of stairs twice a day as part of her job responsibilities. During that time, Elizabeth Kuehl, an HR partner, laughed at Swansey and said: "Oh my god Niesha, that's your cane? I thought it was one of the older employees' canes." Letter 3, ECF No. 1-1 at 2–5[2] (quotation marks omitted). Also in November 2023, Swansey reached out to Owens again to discuss continued issues with favoritism and a hostile work environment at the plant.

During this period, Swansey also suffered from Idiopathic Intracranial Hypertension ("IIH"). In March 2024, Swansey notified a Mrs. Nelson about her worsening symptoms and

---

[1] Unless otherwise stated, the facts described in this section are as alleged in Swansey's complaint and its accompanying exhibits, ECF No. 1-1. At the motion to dismiss stage, the Court "accept[s] as true all factual allegations in the . . . complaint and draw[s] all permissible inferences in [Swansey's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

[2] Since Swansey's letter is not separately paginated, the Court refers to the page numbers generated by CM/ECF when identifying specific portions of the letter.

received verbal authorization to arrive tardy. This was in addition to a five-minute grace period that Tyson gave her.

On October 16, 2024, one of Swansey's coworkers—Keri Cameron—was called into Crane's office to hear the results of an ongoing investigation of Cameron's prior allegations that she experienced harassment from her supervisors and peers. During that meeting, Cameron was told she was suspended, and after reacting with profanity and threatening to pursue legal action, Cameron was terminated. Crane asked Swansey to make a statement about the incident; Swansey said she would not because, if she did, she would have to talk about the harassment that Cameron reported and how nothing was done to address it.

The next week, Swansey met with Nelson, who made false allegations about Swansey's performance and presented Swansey with a performance improvement plan ("PIP"). Swansey asked for an investigation to show that the issues addressed in the PIP were false, but she was not given a chance.

Roughly a month later, on November 25, 2024, Tyson issued a Disciplinary Action Notification Report informing Swansey that she arrived tardy past her five-minute grace period three times.

Swansey's experience at work exacerbated her IIH and contributed to increased blood pressure. To address these health concerns, Swansey received leave from January 9 to February 10, 2025, under the Family and Medical Leave Act, 28 U.S.C. §§ 2601–2654. After she returned to work, Swansey learned that Tyson had imposed a quota of 160 cases created weekly where no quota had existed before.

On April 25, 2025, Tyson terminated Swansey's employment. The asserted reasons were that Swansey had not met her quota of 160 cases created weekly and had not demonstrated

measurable and sustained growth. This is despite Swansey demonstrating improved timeliness by arriving late to work substantially less in the month preceding her termination than she had previously.

Swansey filed her complaint on February 9, 2026. In it, she alleges that Tyson discriminated against her on the basis of disability and retaliated against her in violation of the ADA. Attached to her complaint, Swansey provides a letter to the Court explaining her allegations. The attachments also include text messages, Compl. Ex. A, ECF No. 1-1 at 6–16, medical documents, Compl. Ex. B, ECF No. 1-1 at 17–25, emails, Compl. Ex. C, ECF No. 1-1 at 26–45, and other exhibits to support her claims.

On June 4, 2026, Tyson filed the instant motion to dismiss. It argues that Swansey's failure to accommodate claim based on her need to regularly go up and down stairs after returning from leave in late 2023 must be dismissed for failure to timely exhaust administrative remedies. Mem. Supp. Mot. Dismiss 3–4, ECF No. 12. Tyson also contends that Swansey does not allege facts that state a claim for a violation of the ADA under any other theories of liability. *Id.* at 5–9. In making this assertion, Tyson maintains that the Court should not consider the exhibits attached to Swansey's complaint since such an "exhibit dump" cannot cure her deficient complaint. *Id.* at 9–10. Swansey timely filed a response, ECF No. 16, opposing the motion to dismiss in its entirety.

## DISCUSSION

### I. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007). It must "plausibly give rise to an entitlement to relief" by pleading sufficient factual content that the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "The complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed to be true." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013). A *pro se* plaintiff's complaint is "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). To prevail on a motion brought under Rule 12(b)(6), "movants must prove entitlement to relief." *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## II. Analysis

### a. The Exhibits

Tyson argues that the Court should not consider the exhibits attached to Swansey's complaint because "[n]either Tyson nor this Court should be required to wade through the Extraneous Materials to determine whether they augment and/or cure the legal and factual defects in the Complaint." Mem. Supp. Mot. Dismiss 9–10 (citing *Smith v. ServiceMac, LLC*, No. 25 C 3540, 2025 WL 3280841 (N.D. Ill. Nov. 25, 2025)). It further contends that considering the exhibits is improper because Swansey filed a "fill-in-the-blank," *id.* at 1, "short, sparse complaint," *id.* at 10, that fails to put Tyson on notice of what it is being sued for.

The Court disagrees and will consider the exhibits. First, it is legally incorrect to suggest that factual material in exhibits is not considered part of the complaint for purposes of a motion to dismiss. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (explaining that, when considering a motion to dismiss, courts "may examine exhibits, including video exhibits, attached to the complaint"). Second, Swansey's "fill-in-the-blank" complaint, Mem. Supp. Mot.

Dismiss 1, is a complaint form provided by the Court to assist *pro se* plaintiffs in bringing claims of employment discrimination. Swansey was right to use it. Given the short nature of the form, attaching a letter to further elucidate her allegations was prudent. Moreover, despite Tyson's criticism of Swansey's filings, *see id.* at 9 (stating that "[Swansey's] *pro se* status seemingly is not serving her well"), the Court finds that Swansey's exhibits, especially the letter to the Court, give a clear, concise, and well-organized outline of the factual allegations underlying her claims.

Tyson's reference to *Smith* is inapposite. The plaintiff in *Smith* attached exhibits in a manner that did not allow the Court to identify the critical facts supporting the plaintiff's claims. *See Smith*, 2025 WL 3280841, at *3. It was in that context that the Court encouraged the plaintiff to "present his allegations concisely *in his complaint* rather than appending a stack of exhibits to a bare-bones complaint and leaving it to the Court to try to sort out." *Id.* (emphasis in original). Conversely, in this case, while Swansey did attach nearly 80 pages of exhibits, she did not do so in a way that made it impossible for the Court to discern the facts supporting her claims. Instead, she attached a letter outlining, in clear narrative form, the substance of her dispute with Tyson.

In sum, while the Court will not pour over every line of the attached time log or each word of every text and email to make Swansey's case for her, neither will it ignore exhibits that succinctly detail the relevant facts.

**b. Exhaustion of Administrative Remedies**

To bring a claim for a violation of rights protected by the ADA, a plaintiff must file an administrative charge within 180 days of the occurrence of the allegedly unlawful employment practice or within 300 days if the complainant first instituted proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1); *see* 42 U.S.C. § 12117(a) (incorporating § 2000e-5 as a

requirement for the ADA); *Ballard v. Ameren Ill. Co.*, 173 F.4th 946, 949 (7th Cir. 2026); *see also Fort Bend Cnty. v. Davis*, 587 U.S. 541, 547–52 (2019) (describing § 2000e-5's time limits as "preconditions to relief").

Tyson argues that the Court must dismiss Swansey's failure to accommodate claim (and all other claims predating January 31, 2024) as time-barred. Mem. Supp. Mot. Dismiss 3–4. Tyson asserts, with supporting documentation, that Swansey did not submit a charge with the EEOC until November 26, 2024. *Id.*; *see also* First EEOC Charge, Mem. Supp. Mot. Dismiss Ex. A, ECF No. 12-1 at 1–3. This was more than 300 days[3] after Swansey was forced to climb stairs after returning from medical leave in late 2023. Swansey does not dispute that she first filed a charge with the EEOC on November 26, 2024. *See* Resp. Mot. Dismiss 1. Instead, she asks the Court to apply the continuing violation doctrine. *Id.*

Before reaching the merits of Tyson's argument, the Court must address whether it is proper to consider the attached EEOC Charge. At the motion to dismiss stage, courts are typically restricted to considering the allegations a plaintiff brings in her complaint. *See Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 198 (7th Cir. 1985); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988) ("[A] district court is entitled to consider exhibits attached to the complaint as part of the pleadings."). However, courts may consider documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (quotation marks omitted). It is well-established that when a plaintiff references an EEOC Charge in her complaint, as Swansey has done, *see* Compl. 2, then the Charge "[is] deemed incorporated into

[3] Since Swansey filed her complaint directly with the EEOC, instead of with a state or local agency, Swansey would appear to have only 180 days to file her charge. However, since Tyson proceeds under the assumption that the 300-day limit applies, *see* Mem. Supp. Mot. Dismiss 3–4, the Court will also apply the more lenient, 300-day deadline.

the plaintiff's pleadings," *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). As such, the Court will consider the Charge.

The only question on the merits is whether the continuing violation doctrine applies to preserve Swansey's otherwise time-barred claim. "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). In most cases, "a refusal to accommodate is a discrete act—not an ongoing omission—and therefore the continuing violation doctrine does not apply." *Teague v. Nw. Mem'l Hosp.*, 492 F. App'x. 680, 684 (7th Cir. 2012). In any case, the doctrine only applies to connect actions that are "part of the same claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002). The continuing violation doctrine does not apply to extend a Plaintiff's time to file administrative charges "[i]f the later actions have no relation to the earlier ones." *Shiba v. Mullin*, 174 F. 4th 1025, 1034–35 (7th Cir. 2026)

Swansey details a number of grievances with her supervisors and coworkers at Tyson. *See generally* Compl.; Letter. However, the only events she connects to her disability involving leg weakness and bulging in her lower back occurred between September and December 2023. Swansey returned from leave on October 31, 2023. Compl. 4. For "more than 1 month after [her] return," Tyson "forced [her] to painfully continue to walk up and down the stairs using a cane." Letter 3. During that period, on November 7, 2023, Kuehl "began laughing" and flippantly joked about thinking Swansey's cane belonged to one of the older employees. *Id.* In early December 2023, Swansey texted Owens about her disability and the lack of accommodations. *See id.*; Text Messages 4–7. Based on this timeline, even assuming the failure

to accommodate extended through the end of December 2023, Swansey had to file an administrative charge by October 26, 2024. She did not file such a charge until November 26, 2024. *See* First EEOC Charge 2.

There is nothing in Swansey's complaint that suggests the continuing violation doctrine should apply to extend the filing deadline. None of Swansey's subsequent grievances are related to this failure to accommodate, except that she characterizes them all as hostile and discriminatory behavior. For example, the allegedly hostile treatment after Cameron's termination appears related to Swansey's refusal to write a statement about the events, not Swansey's leg pain or the bulging in her lower back. *See* Letter 3–4. Similarly, although Swansey discusses how her IIH was exacerbated by her treatment at work, Tyson's treatment of her IIH appears distinct from its treatment of her leg pain and bulging in her lower back. There is nothing in her filings that would unite the two in a single failure to accommodate claim. *See generally* Compl.; Letter; Resp. Mot. Dismiss.

Accordingly, Tyson's motion to dismiss Swansey's failure to accommodate claim rooted in an alleged failure to accommodate her disability in late 2023 is GRANTED. However, the underlying facts could remain relevant to other claims—such as for a hostile work environment—that may qualify as a continuing violation.

**c. Disability Discrimination**

In her complaint, Swansey alleges that her employment at Tyson was rife with favoritism, adverse treatment, failure to accommodate medical impairments, and regular retaliation whenever Swansey attempted to push back against the culture of hostile treatment. *See generally* Compl.; Letter. Tyson addresses these factual allegations under several legal umbrellas: unlawful termination, retaliation, and interference. *See generally* Mem. Supp. Mot.

Dismiss. Swansey adds language suggesting that she brings a hostile work environment claim. *See, e.g.*, Resp. Mot. Dismiss 4 (arguing that Tyson demonstrated "hostile behavior" and ignored Swansey's "pleas of a hostile environment").

Tyson raises a broad range of arguments that all boil down to: Swansey has not alleged sufficient facts to make her entitlement to relief plausible under any of these theories. *See* Mem. Supp. Mot. Dismiss 5–9. The problem is that, in presenting its arguments, Tyson has not engaged with the substance of Swansey's allegations. Tyson's motion presumes that the exhibits attached to Swansey's complaint have no import. Because the Court rejects this supposition, Tyson's presumption is fatal.

For example, Tyson avers that Swansey has not alleged a disability because she only states that she was "injured" and "fails to offer even a conclusory allegation that she is 'disabled' for purposes of the ADA." Mem. Supp. Mot. Dismiss 5. But Swansey alleges that "[i]n September 2023, [she] experienced left leg weakness, thoracic spasms, tenderness over thoracic spine and tenderness in left groin." Letter 3. She contends that "[t]hese symptoms were the effect of a now new diagnosis of 2 bulging in [her] lower back" that disabled her and caused her to request and receive medical leave. *Id.* Regardless of whether or not these impairments constitute disabilities within the meaning of the ADA, they are clearly more than a bare statement that Swansey was "injured." Tyson therefore has not met its burden to prove that it is entitled, on these grounds, to relief under Rule 12(b)(6).

In another instance, Tyson argues that Swansey "has not pled any facts establishing any causal connection between her alleged protected activity and any adverse employment action (e.g., her termination)." Mem. Supp. Mot. Dismiss 7. In making this argument, Tyson never addresses Swansey's allegations that less than a week after Swansey's alleged protected

activity—refusing to write a statement regarding Cameron's termination—Nelson brought false accusations against Swansey and imposed a Performance Improvement Plan, and at that same time Tyson changed its treatment of Swansey's tardiness accommodation, all for the purpose of pretextually terminating her employment. *Compare* Letter 3–4, *with* Mem. Supp. Mot. Dismiss 7–8.

Or again, in arguing that Swansey cannot bring an interference claim because she has alleged only isolated acts of discrimination, Tyson states that Swansey's claim "appears to be rooted solely in her allegation that during the week of November 7, 2023, she was laughed at by a co-worker for having to use a cane." Mem. Supp. Mot. Dismiss 9 (quotation marks omitted). This argument overlooks Swansey's allegations that her coworkers and supervisors regularly disrespected her, treated her differently than other employees, falsely accused her, and ignored her demonstrable improvement when assessing her performance. *See* Letter 2–5.

The Court makes no affirmative finding that Swansey's claims are meritorious but rather finds that Tyson failed to meet its burden of demonstrating their lack of merit. By refusing to engage with the substance of Swansey's allegations, Tyson has manifestly failed to shoulder its burden of proving that Swansey's allegations do not state a claim for relief.

**CONCLUSION**

Accordingly, Defendant Tyson Food Inc's motion to dismiss, ECF No. 11, is GRANTED IN PART and DENIED IN PART. Plaintiff Niesha Swansey's failure to accommodate claim rooted in Tyson's demand that she go up and down stairs after returning from medical leave in late 2023 is DISMISSED. The case may proceed, limited to other theories of liability under the Americans with Disabilities Act. To the extent Swansey wishes to pursue theories of liability

under other anti-discrimination or labor statutes, she may file a motion for leave to amend her complaint.

Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Tyson has fourteen days to file a responsive pleading. Because Plaintiff Niesha Swansey's letter to the Court, ECF No. 1-1 at 2–5, is best considered an extension of Swansey's complaint, the Court construes it as a continuation of the Complaint, ECF No. 1, and DIRECTS Tyson to answer its allegations in a manner compliant with Federal Rule of Civil Procedure 8(b).

Entered this 13th day of October, 2026.

s/ Sara Darrow

SARA DARROW
UNITED STATES DISTRICT JUDGE